IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAVID IDLEMAN,

              Plaintiff,

v.                                    CIVIL ACTION NO.  2:19-cv-00069

DEPUTY MIKE KING, et al.,

              Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court are motions for summary judgment from Defendants Trooper Seth McDonald ("Trooper McDonald"), (ECF No. 45), and Deputy Mike King ("Deputy King"). (ECF No. 47.)   For reasons more fully explained herein, Defendant Seth McDonald's Motion for Partial Summary Judgment, (ECF No. 45), is **GRANTED**.   Defendant Mike King's Motion for Summary Judgment, (ECF No. 47), is **DENIED** in part and **GRANTED** in part.

I.    *BACKGROUND*

This matter arises out of the arrest of Plaintiff David Idleman ("Plaintiff") effected by law enforcement on January 28, 2018.   As noted above, the Defendants have filed two separate motions.   Trooper McDonald has filed a motion for partial summary judgment.   (ECF No. 45.) Deputy King has filed a motion for summary judgment on all of Plaintiff's claims.   (ECF No. 47.) However, and as will be explained *infra*, the parties disagree as to nearly every material fact. Because of this factual dispute, the Court reviews the factual background of this action as drawn from the parties' briefings and attached materials.

A. *Trooper McDonald*[1]

On the evening of January 28th, shortly before 7:00 p.m., Plaintiff entered the Roane County bus garage parking lot.   (ECF No. 46 at 1.)   Plaintiff, a farmer and school bus driver, had traveled to the Roane County bus garage to pick up his bus in preparation for the next morning's run.   (*Id.*)   Plaintiff parked his vehicle, gathered some personal belongings, and began walking toward his bus.   (*Id.*)   It was at this moment when Plaintiff first noticed Defendant McDonald parked behind him with his emergency lights illuminated.   (*Id.*)   Plaintiff approached Defendant McDonald and asked how he could help the Trooper.   (*Id.* at 2.)   Defendant McDonald responded by asking Plaintiff what he was doing in the bus parking lot.   (*Id.*)   Plaintiff explained to Defendant McDonald that he was a bus driver.   (*Id.*)   Defendant McDonald then informed Plaintiff that his personal vehicle had a headlight out, and he asked Plaintiff for his license and registration.   (*Id.*)   Plaintiff explained that his wife had been involved in a car-deer collision the week prior, and that he was planning on replacing the headlight.   (*Id.*)   Plaintiff then immediately returned to his vehicle to retrieve his license and registration.   (*Id.*)

When Plaintiff reached his vehicle, he asked Trooper McDonald if the trooper would hold his tea while he looked for his license and registration, as Plaintiff's hands were full.   (*Id.*)   Trooper McDonald acquiesced and took the Plaintiff's tea.   (*Id.*)   While retrieving his paperwork, however, Plaintiff testified that Trooper McDonald became annoyed, so Plaintiff took his tea back and set it on the roof of his vehicle.   (*Id.*)   At this moment, Trooper McDonald, seemingly without provocation, forcefully shoved Plaintiff into the side of his vehicle and radioed for backup.   (*Id.*)   Trooper McDonald then turned Plaintiff around, placed Plaintiff's hands behind his back, and

---

[1] While Trooper McDonald disputes Plaintiff's allegations, Trooper McDonald has based his partial motion on the facts viewed in the light most favorable to Plaintiff.   (ECF No. 46 at 1, n.1.)

pinned him to the vehicle.  (*Id.*)   Trooper McDonald had not placed Plaintiff in handcuffs and at some point moved Plaintiff to the rear of the vehicle and instructed him to "stand there" while McDonald waited for backup to arrive.  (*Id.* at 2–3.)   Trooper McDonald then began to look for Plaintiff's registration in Plaintiff's vehicle.  (*Id.* at 3.)

Around the time when Trooper McDonald began searching Plaintiff's vehicle, Deputy King arrived on the scene.  (*Id.*)   Deputy King then assisted Trooper McDonald search Plaintiff's vehicle.  (*Id.*)   While the Defendants searched, Plaintiff told the officers that they did not have his permission to search the vehicle, and Plaintiff started to walk towards the car where the officers were searching.  (*Id.*)   In response to Plaintiff's actions, the Defendants returned to Plaintiff, grabbed his arms, and began dragging him towards Trooper McDonald's vehicle.  (*Id.*)   As the Defendants dragged Plaintiff, Plaintiff fell "slowly" and face-first into the ground.  (*Id.* at 3.) Plaintiff then alleges that Deputy King slammed his face into the ground.  (*Id.*)   Rather than placing Plaintiff in Trooper McDonald's cruiser, the officers left Plaintiff on the ground, handcuffed him, and then returned to Plaintiff's vehicle to continue their search.  (*Id.*)   Plaintiff stated that Deputy King placed a knee into his back and forced his head into the ground while Trooper McDonald placed the handcuffs on Plaintiff.  (*Id.*)

Plaintiff continued yelling at the Defendants that he did not consent to their searching of his vehicle.  (*Id.* at 4.)   Deputy King responded by cursing at the Plaintiff, returned to where Plaintiff was lying on the ground, and "stepped over his back like he was 'stepping over a fallen log in the forest.'"  (*Id.*)   Plaintiff then stated that both Deputy King and Trooper McDonald kicked him in the neck.  (*Id.*)   The officers then returned to Plaintiff's vehicle to again continue their search, a point which the Defendants dispute.  (*Id.*)

3

### B. Deputy King

Deputy King, however, recites a different version of these events.[2]   Deputy King asserts

that Trooper McDonald observed Plaintiff driving down Route 33 with a headlight out.   (ECF No.

48 at 3.)   Trooper McDonald initiated a traffic stop based on his observation.   (*Id.*)   Deputy King

states that Plaintiff refused to give Trooper McDonald his information multiple times.   (*Id.*)

Trooper McDonald then informed Plaintiff that he would be arrested and charged with obstruction,

at which point Plaintiff exited the vehicle.   (*Id.*)   A struggle ensued between the two, and Plaintiff

ignored commands to put his hands behind his back.   (*Id.*)   Trooper McDonald eventually

handcuffed Plaintiff, placed him on the hood of his police vehicle, and radioed for assistance.

(*Id.*)   Trooper McDonald then performed a *Terry* frisk and began to search Plaintiff's vehicle.

(*Id.*)   Upon initiating the search, Plaintiff began approaching Trooper McDonald, who then "put

Plaintiff on the ground."   (*Id.*)

Deputy King further asserts that he was at the West Virginia State Police detachment in

Spencer, West Virginia, when Trooper McDonald radioed for assistance.   (*Id.* at 4.)   Deputy

King traveled to Trooper McDonald's location, and upon arrival, observed that Plaintiff was

already on the ground in handcuffs.   (*Id.*)   Deputy King maintains that he never touched Plaintiff

and never assisted in searching Plaintiff's vehicle.   (*Id.*)   In fact, Deputy King asserts his only

involvement with Plaintiff was back at the Spencer detachment, when Plaintiff requested to use a

telephone.   (*Id.*)

---

[2] Deputy King does recite a similar version of events as in Trooper McDonald's motion before highlighting the numerous disputes with Plaintiff's version. (ECF No. 48 at 1–2.)   For the sake of brevity, those facts are not repeated here.

### C.  Procedural Background

Plaintiff was eventually charged with defective equipment and obstruction.  (ECF No. 46 at 4.)  Plaintiff later entered into a plea agreement which required him to plead no contest to the defective equipment charge, for which the obstruction charge would be dropped.  (*Id.*)

Based on the above allegations, Plaintiff brought a cause of action against the Defendants on January 25, 2019.  (ECF No. 1.)  On October 23, 2019, Plaintiff filed an Amended Complaint, in which he asserted six claims.  (ECF No. 34.)  In Count I, Plaintiff asserted an unreasonable seizure effectuated by excessive force under 42 U.S.C. § 1983.  Count II asserted a claim of bystander liability, which was also brought under § 1983.  Count III alleged an unreasonable search in violation of the Fourth Amendment and brought pursuant to § 1983.  Count IV asserted a state law battery.  Count V asserted a state law false imprisonment claim.  And Count VI alleged a state-law malicious prosecution claim.

On May 6, 2020, Defendants filed their motions for summary judgment.  (ECF Nos. 45, 47.)  Plaintiff responded to each on May 20, supporting Trooper McDonald's motion and opposing Deputy King's motion.  (ECF Nos. 49, 50.)  On May 27, 2020, Deputy King filed his reply.  (ECF No. 51.)  Trooper McDonald did not file a reply.  As such, these motions are fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. In pertinent part, this rule states that a court should grant summary judgment if "there is no genuine issue as to any material fact."  Summary judgment should not be granted, however, if there are factual issues that reasonably may be resolved in favor of either party.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986).   "Facts are 'material' when they might affect the outcome of the

case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a

verdict for the nonmoving party."   *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*,

597 F.3d 570, 576 (4th Cir. 2010).   When evaluating these factual issues, the Court must view the

evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398

U.S. 144, 157 (1970).

      "The burden is on the nonmoving party to show that there is a genuine issue of material

fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ."   *Guessous*

*v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).   "This burden may be met by

use of the depositions and other discovery materials."   *Barwick v. Celotex Corp.*, 736 F.2d 946,

958 (4th Cir. 1984).   Once the moving party meets its burden, the burden shifts to the non-moving

party to "make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."   *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).   Should a party fail to make a sufficient showing on one element of that

party's case, the failure of proof "necessarily renders all other facts immaterial."   *Id.* at 323.

      "[A] party opposing a properly supported motion for summary judgment may not rest upon

mere allegations or denials of his pleading, but must set forth specific facts showing that there is a

genuine issue for trial."   *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of

evidence" in support of the nonmoving party is not enough to withstand summary judgment; the

judge must ask whether "the jury could reasonably find for the plaintiff."   *Id.* at 252.

### III.    DISCUSSION

This Court will begin its analysis with Trooper McDonald's Partial Motion for Summary Judgment.   (ECF No. 45.)   Then, the Court will review Deputy King's Motion for Summary Judgment.   (ECF No. 47.)

### A.  Trooper McDonald's Partial Motion for Summary Judgment

Trooper McDonald has moved this Court to grant summary judgment on Count V (false imprisonment) and Count VI (malicious prosecution) of Plaintiff's amended complaint.   (*See* ECF No. 46.)   Trooper McDonald concedes that "Plaintiff's other claims are subject to disputed facts and are not ripe for summary judgment."   (*Id.* at 5.)   In response, Plaintiff concedes that "[a]fter discovery's completion . . . he cannot make out his claims of false imprisonment and malicious prosecution."   (ECF No. 50.)   Therefore, Trooper McDonald's Partial Motion for Summary Judgment, (ECF No. 45), is hereby **GRANTED**, and Plaintiff's claims of false imprisonment and malicious prosecution as asserted against Trooper McDonald are **DISMISSED**.

### B.  Deputy King's Motion for Summary Judgment

Deputy King has moved this Court to grant summary judgment in his favor on every claim alleged by Plaintiff.   (ECF No. 47.)   Deputy King argues that he is entitled to qualified immunity on all of Plaintiff's federal claims (Counts I through III) "because Deputy King was not present." (ECF No. 48 at 6.)   Deputy King also argues Plaintiff's state-law claim of battery fails for similar reasons, namely that "there is no credible evidence that Plaintiff's version of events actually happened," because "Plaintiff's timeline is a temporal impossibility."   (*Id.* at 12.)   Finally, Deputy King argues that Plaintiff's claims of malicious prosecution and false imprisonment fail as

a matter of law.  (*Id.* at 13–15.)   The Court begins its analysis with the malicious prosecution and

false imprisonment claims before addressing the remaining claims.

### 1. *False Imprisonment and Malicious Prosecution*

Similar to Plaintiff's response to Trooper McDonald's motion for partial summary

judgment, Plaintiff agrees with Deputy King that his claims for false imprisonment and malicious

prosecution are subject to dismissal.  (ECF No. 49 at 8.)   Therefore, Deputy King's Motion for

Summary Judgment is **GRANTED** as to Plaintiff's claims against him for false imprisonment and

malicious prosecution, and the Court hereby orders those claims **DISMISSED** as asserted against

Deputy King.

### 2. *Federal Claims and State-Law Battery*

Deputy King's remaining argument is summarized in his own words: "[B]ecause Plaintiff's

tale is so inherently incredible, and it [*sic*] completely at odds with the independent evidence,

Plaintiff's version should be disregarded."  (ECF No. 48 at 12.)   Thus, instead of viewing the

facts in the light most favorable to Plaintiff, Deputy King spends nearly the entirety of his brief

attempting to resolve disputes as to the material facts in his favor.  *See Witt v. West Virginia State*

*Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011).

Certainly, "[w]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*,

550 U.S. 372, 378 (2007).   However, as the Fourth Circuit has recognized, "*Scott* does not hold

that courts should reject a plaintiff's account on summary judgment whenever documentary

evidence, such as a video, offers some support for a governmental officer's version of events."

*Witt*, 633 F.3d at 276.   *See also Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019) ("*Scott* is the exception, not the rule. . . . Summary judgment is proper under *Scott* only when there is evidence – like the videotape in *Scott* itself – of undisputed authenticity that shows some material element of the plaintiff's account to be 'blatantly and demonstrably false.'")   Rather, a reviewing court should not credit the plaintiff's version of events *only* when documentary evidence "blatantly contradict[s]" the plaintiff's account.   *Scott*, 550 at 380.

 That is not the case here.   In fact, what has been presented to the Court is a far cry from anything that would cause the Court to even consider invoking the analysis articulated in *Scott*. Deputy King's brief begins by clearly setting forth numerous material factual disputes between the parties.   Moreover, Deputy King's version of events is not supported by documentary evidence that renders Plaintiff's version "blatantly and demonstrably false."   At best, this evidence serves to merely undermine Plaintiff, but it is of no help in resolving the parties' dispute as to the facts. *See Witt*, 633 F.3d at 277.   Further, it conveniently ignores other evidence that could similarly serve to undermine Deputy King's version of the facts, such as the Plaintiff's medical records indicating a head injury (ECF No. 49 at Ex. C), or Trooper McDonald's testimony indicating differences in his written report.   (*Id.* at Ex. E, 52:3–24; 53:1–24; 54:1–12.)   Simply, the record evidence in this case does not "blatantly contradict[]" Plaintiff's account of the facts, and it does not merit the Court granting summary judgment on the remaining claims against Deputy King. The factual disputes here are properly determined by a jury.   Therefore, Deputy King's motion for summary judgment on Count I through IV is hereby **DENIED**.

*IV.    CONCLUSION*

Deputy King's argument for summary judgment regarding qualified immunity and the state law battery claim, wholly based on disputed material facts, is an egregiously frivolous argument. While there may be some documentary evidence that undermines Plaintiff's version of events, that evidence falls so short of the standard required that this Court has considered whether to order Deputy King and defense counsel to show cause as to why they should not be sanctioned for filing for summary judgment on such frivolous grounds.   *See* Fed. R. Civ. P. 11(b), (c)(3).

However, in consideration of the fact that Plaintiff has not moved this Court for sanctions, the Court has decided against considering sanctions at this time.

Deputy King and his counsel are admonished, however, that frivolous litigation such as this greatly and unnecessarily increases the burden on the Court.   It does so at the expense of the other litigants, and it is at odds with the expectations set forth in Rule 11.   The future pursuit of frivolous litigation in this Court will not be taken lightly.

For the reasons stated above, the Court **GRANTS** Trooper McDonald's Partial Motion for Summary Judgment, (ECF No. 45).   The Court **GRANTS IN PART** Deputy King's Motion for Summary Judgment, (ECF No. 47), on Plaintiff's claims of (1) false imprisonment, and (2) malicious prosecution.   The Court therefore **DISMISSES** Plaintiff's claims of false imprisonment and malicious prosecution as asserted against the Defendants.   Summary judgment is further **DENIED IN PART** as to the remainder of Deputy King's motion.


**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        July 22, 2020


_____
THOMAS E. JOHNSTON, CHIEF JUDGE

11